## BELAIR v. THE C. & N. W. R. Co.

1. **Evidence:** ADMISSION OF: ERROR WITHOUT PREJUDICE. In an action against a railway company for damages, the admission of a book kept by the car repairer, showing that after the accident the car which occasioned the injury was taken to the shop and repaired, was *held* to be without prejudice, in view of the fact that the jury specially found the car to be defective in the particular which caused the injury.

2. ———: FACTS: EXPERTS. If the relations of facts and their probable results can be determined without especial skill or study, the facts themselves must be given to the jury, who should be left to draw their own conclusions. In such a case the testimony of experts is not competent.

3. ———: REJECTION OF. Where evidence is excluded, but the facts to which it relates are established by other testimony, the exclusion is error without prejudice.

4. **Railroads:** NEGLIGENCE: BURDEN OF PROOF. In an action for damages against a railway company based upon negligence in failing to keep its cars in repair, the plaintiff must not only establish by a pre-

ponderance of evidence, that his own negligence did not contribute to the injury, but also that he was ignorant of the defects which resulted in the injury.

5. ———: ———: EVIDENCE. If the defect be of such a character that the owner or person using the defective machinery could not fail to observe it, he is charged with knowledge of the defect from mere use, but if it be a latent defect actual knowledge must be proved.

6. ———: ———: WAIVER. If the plaintiff had knowledge of the defect, and complained thereof to defendant, by whom he was assured that it should be repaired within a reasonable time, he would not be presumed to have waived the defect by continuing for such a length of time in the employ of the company.

7. ———: ———: REASONABLE TIME. What constitutes a reasonable time depends upon the circumstances of each particular case.

8. Instruction: HOW TO BE CONSIDERED. The instructions should be considered together, and an omission in one, which is supplied in another, cannot be made the ground of objection.

9. ———: REFUSAL OF. It is not error to refuse to give instructions whose substance is embodied in others, which are given to the jury.

10. Negligence: RAILROAD: COUPLING CARS. Whether or not it is negligent for a brakeman to stand facing the draw-bar while making a coupling, is a question of fact for the jury.

11. Damages: LIMIT OF. Where a young man, thirty years of age, engaged in an employment which has a regular system of promotions, and earning $540 a year, was permanently disabled, a verdict of $11,000 in an action for damages therefor was *held* not to be excessive.

*Appeal from Boone Circuit Court.*

TUESDAY, JUNE 27.

THE petition alleged, in substance, that on the 3rd day of January, 1872, the plaintiff was in the employment of the defendant as a brakeman, and that, by reason of such employment, it became his duty to couple and uncouple cars upon the trains on which he was employed, subject to the orders of the conductor.

That at Moingona, pursuant to the orders of the conductor, he proceeded to couple the way car of the train to a locomotive engine.

That the draw-bars and draft irons of the way car were out of repair, unsafe, and unfit for use, the draw-bars and draft

irons were broken and too short, and the springs were broken and weak; the head of the draw-bars or bumpers were worn off, and were altogether unfit for use, of all of which defendants had notice.

That by reason of these defects the draw-bar slid back under the car when the locomotive touched it, and the usual space intervening between cars when being coupled was greatly reduced, and plaintiff, without fault or negligence on his part, was crushed and permanently injured. Plaintiff demands judgment for the sum of $15,000.

The answer denies all the allegations of the petition, and alleges that plaintiff's injuries were received because of his own carelessness and negligence.

There was a jury trial and verdict and judgment for plaintiff for $11,000. The defendant appeals.

*N. M. Hubbard, E. S. Bailey,* and *I. N. Kidder,* for the appellant.

An expert may testify and express an opinion in regard to the conduct of the person injured, and how far it was according to the rules of careful and prudent management. The manner of making couplings of cars and how it ought to be done, is not within the range of common observation and experience. (1 Redf. R'ys, pp. 552–3–4; *Sauers v. Duke,* 8 Minn., 23; *Lamoure v. Caryl,* 4 Denio, 370.) Knowledge of the defect or insufficiency must be brought home to the owner or proof that he was negligently ignorant of the same. (*Wright v. N. Y. C. R. R.,* 25 N. Y., 562.) The jury were not at liberty to determine, under the testimony, whether the owner might not have known the defective condition if he had used reasonable care; but they were restricted to determining whether he had actual and positive knowledge thereof. (*Greenleaf v. Ill. Cen. R. Co.,* 29 Iowa, 14.) Negligence is the want of the exercise of ordinary care, such as is usually exercised in the like circumstances by the majority of the community. (Shearman and Redf. on Neg. § 20.) If the plaintiff was only required to perform an ordinary service, not different from his ordinary occupation and was not directed to do it in an

unusual manner, he cannot avail himself of the plea that he was acting under the orders of his superior. (*Davis v. R. R. Co.*, 20 Mich., 105.) If a servant knows that the materials with which he works are defective and continues his work without objection, and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risk of such defects. (*Kroy v. C., R. I. & P. R. Co.*, 32 Iowa, 357.) If he continues to use the dangerous machinery after a reasonable time is given the master to cure the defect, he does so at his peril. (Shearm. and Redf. on Neg., § 94.) The verdict is excessive. (*Ill. Cen. R. Co. v. Welch*, 52 Ill., 183.)

*Holmes & Reynolds*, and *H. E. J. Boardman*, for the appellee.

One who employs servants in a complex and dangerous business ought to prescribe rules for its safe management, and failing to do so is personally liable. (S. & R. on Neg., § 93; *Vose v. Lancashire R. Co.*, 2 Hurlst. & N., 728.) The employes of defendant, such as brakemen, were not competent to testify as experts. (1 Greenl. on Ev., § 440; *Whitmore v Bowman*, 4 G. Greene, 118; *State v. Vincent*, 24 Iowa, 570.) If there are circumstances calculated to throw defendant off his guard, then negligence is a question for the jury. (*Artz v. C., R. I. & P. R. Co.*, 34 Iowa, 161.) The verdict is not excessive. (*Sherman v. Western Stage Co.*, 24 Iowa, 542.) In determining whether or not damages are excessive, it must be considered whether the verdict was the result of passion or prejudice. (Code, § 2837.) In a case of simple personal injury from negligence, the damages should be such as would compensate the injured party for loss of time, medical and other expenses, physical pain, mental distress and disability. (*Peoria Bridge Ass. v. Lorreis*, 20 Ind., 235; *Hunt v. Hoyt*, 20 Ill., 544; *Morse v. Auburn & S. R. R.*, 10 Barb., 621; *Keyes v. Devlin*, 3 E. D. Smith, 518; *West v. Forrest*, 22 Mo., 344.) If the injury be permanent, compensation should be given, for future as well as present disability. (*Frink v. Shroyer*, 18 Ill., 418; *State v. Rink*, 18 Ill., 527; *Tiler v. New York*,

SUPREME COURT OF IOWA,

49 N. Y., 42; *Ballou v. Farmer*, 11 Allen, 73; *Caldwell v. Murphy*, 1 Kern., 416.) There can be no fixed rule of compensation for the pain and anguish of body and mind, nor for the loss of time in business, or permanent injury to health and body. (*Ill. Cen. R. R. v. Bannon*, 5 Wall., 90.) The amount of damages is a matter entrusted to the sound discretion of the jury. (*Tauth v. Keyle*, 11 Grattan, 697; 2 Redf. on R'ys, 222–3.)

DAY, J.—I. The plaintiff was injured on the 3rd day of January, 1872, by way car numbered forty-two. At the trial 1. EVIDENCE: the plaintiff testified that the company keeps a admission of: book by car repairer, showing what repairs are prejudice. made; William Stroner keeps it every night. The plaintiff produced this book, and offered in evidence the following entries: "January 6th, 1872, 42 way car draft iron taken out and repaired." January 10th, 1872, 42 way car, new end timbers on platform; draft iron taken out and made longer; draft timber casting put on old."

These entries were objected to; the objection was overruled and they were admitted. This ruling is assigned as error.

The only purpose which this testimony could effectuate under the issues, would be to show that the draw bar was considered by the company deficient, and that it was rendered more safe, soon after the plaintiff was injured. The defendant introduced William Stroner, the person who kept the book above referred to, and he testified that both the draft irons were taken out, and that each was lengthened about three inches, and that he assisted in taking one of them out on the day of the accident or the day thereafter. The testimony of this witness also shows that one of the draft irons was repaired on the 6th of January, and the other on the 10th of January, 1872. The jury returned their special verdict, that the draft iron was too short to render the coupling reasonably safe. If it should be admitted, therefore, that it was error to admit these entries, in view of the substantive testimony of Stroner and this special finding of the jury, it was clearly error without prejudice.

II. The plaintiff introduced as a witness, Arthur Haddock

whose occupation is braking and switching, and who, at the time of testifying, was in the employment of defendant. Upon cross-examination he was asked the following question: "Would it be prudent for a man to stand any other way than flatwise in making a coupling?"

*2. ——: facts: experts.*

The defendant introduced A. T. Potter, a freight conductor and brakeman in the employment of the defendant, and asked the following questions: "What is the only proper and safe way to couple a way car to a locomotive? State whether it is usually considered unsafe and dangerous, or otherwise, among brakemen, while coupling a way car to a locomotive, to stand otherwise than flatwise? Is it considered safe or unsafe among brakemen to stand facing the draft iron, while coupling a way car to a locomotive?"

These questions and others of like import were objected to, and were excluded. In this ruling consists the second assigned error. The matter of inquiry is not, we think, so far a question of science or skill, as to be a proper subject for the opinion of experts. The projection and construction of the draw heads being shown, and the space usually remaining between the car and the locomotive when the draw heads come in contact, the jury could form an intelligent judgment as to whether or not it would be safe and prudent for one attempting to make a coupling, to go between the car and the engine, in any other position than flatwise, or facing the engine. See *Muldowney v. The Illinois Central R. Co.*, 36 Iowa, 472; *Hamilton v. The Des Moines Valley R. Co.*, Ib., 31. In the latter case it was held not to be competent to ask a railroad agent who had been two years a brakeman, "what is the proper way to couple cars when timber projects?"

The difference between proving what is the usual way of doing an act, and proving that a particular way is safe or unsafe, prudent or imprudent, is quite apparent. The former proof is directed to a fact, the latter to a mere opinion. It is only when a fact to be established partakes so far of the nature of a science, as to require a course of previous habit or study, to the attainment of a knowledge of it, that the opinion of experts can be received. If the relation of facts and their probable results can be determined without especial skill or

study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury. *Muldowney v. Illinois Central Railway Co.*, 36 Iowa., 473; 1 Greenleaf on Evidence, 12 edition, section 440, note 3, and cases cited; 1 Smith's Leading Cases, 286.

To determine the cause of disease or death, or the probable consequences of a wound and the like, special study and experience are necessary. Upon these subjects the opinion of medical experts is admissible. But when it is shown that the bumpers upon cars admit of their approaching within six inches, it needs no special study, experience or skill, to tell whether it is safe or unsafe, prudent or imprudent, to stand between them facing the draw-bar when they are coming in contact.

III. The cause did not come on for trial until nearly twenty-two months after the injury was inflicted. Dr. Mosier was introduced as a witness for plaintiff, and he testified that, on the day that he gave his testimony, he examined plaintiff's injuries. This witness testified that he found evidence of fracture of the pelvis, knitted together by a ligamentous union, and that he considered the injury permanent. He further proceeded to describe the nature and extent of the injury and its probable consequences.

Upon cross-examination he was asked the following question: "Could you tell from your examination of the injury how it was received; that is, from what direction the blow came?" The plaintiff's objection to this question was sustained, and this action of the court is assigned as error.

Appellant claims that, if the blow struck plaintiff on the side, then he was manifestly standing so as to present his sides to the way car and engine, which was unusual, unsafe and negligent, and that if the physician from his examination of the wound would be able to give an opinion as to whether the blow was given in the direction of his back or his side, such testimony would have a tendency to prove one of the issues in the case.

Respecting his position at the time of the accident, the plaintiff testified: "I turned my head, and my body must have turned. I presume the lower part of the tank struck

me on one side, and the edge of the platform struck me on the other side; the standard step did not touch me, I was outside of it.  *    *    *    When it first began to squeeze me I was facing half way cross and flatwise; it caught me and squeezed me, and it did not turn me much; I was not square facing the draft iron.  *    *    *    *    *    *    *    I came against tank partly on my right side; there were bruises at the side of the hip bone on left side; no bruises on the other side; the skin was not broken; the tank timber is seven or eight inches wide; the pelvis bone was fractured between my legs and groin."

No one saw the position of plaintiff at the time of the injury, or gave any direct testimony respecting it. The defendant introduced Henry Ristine, a practising physician, who testified: "I examined the plaintiff to-day; I found evidence of a very severe blow which fractured the pelvis bone, which is a branch of the pubic bone; when he received the injury he must have been standing a little obliquely between the cars; if he had been standing flatwise and they came together within five or six inches, he would not have been injured; standing the other way he would have received severe injury, crushing the bone." A. J. Smith, a witness for defendant, testified: "Belair told me how he got hurt; he said he got squeezed in coupling, that he was standing sidewise to the engine and way car."

There is nothing in the testimony on either side to contradict this evidence. It is shown by the testimony of plaintiff himself, as well as by that of defendant, that plaintiff, at the time he received his injury, was standing so as to present his sides to the way car and engine, which is the very thing sought to be established by the cross-examination of Dr. Mosier. If it should be conceded, then, that this testimony ought to have been received, it is clear that its rejection worked no substantial prejudice. In addition to this, the proposed cross-examination is not pertinent to anything drawn out in the direct examination, and the ruling of the court excluding it may, for that reason, be sustained.

IV. The court in the third instruction directed the jury

that it was incumbent upon plaintiff to establish by a prepon-
derance of testimony certain facts, and that he did not by
his negligence or want of ordinary care con-
tribute to the injury; and that unless he has
established these propositions the jury should
find for the defendant.

<span style="float:left">4. RAILROADS: negligence: burden of proof.</span>

Appellant insists that this instruction omits from the con-
ditions of recovery an essential circumstance, namely, want of
knowledge or means of knowledge on the part of the plaintiff
of the defective and unsafe condition of the draw-bar; and
that the jury must have understood that if the plaintiff had
succeeded in proving the several propositions enumerated in
the instruction, and no others, that he had sustained his cause
of action and was entitled to a verdict.

The jury were not authorized to infer that the plaintiff was
entitled to a verdict upon proof of these facts alone, for in
instruction numbered 13½ the court directed the jury if the
draw bar was in a dangerous condition, by reason of being too
short or defective, or out of repair, and the plaintiff voluntarily
went between the cars, knowing of such dangerous condition,
and then attempted to make the coupling, and was injured in
so doing, he contributed to the injury, and cannot recover."
And in instruction numbered 11 the court directed the jury:
"If the plaintiff had knowledge of the defects, or might have
known them by the use of ordinary care, if there were defects,
and remained in the employment of the defendant, and con-
tinued the use of the defective draw-bar, without objection,
or protest against the use of it in such defective condition, he
thereby assumed the risks attendant upon such use, and can-
not recover."

These ten instructions fully answer this objection of appel-
lant. We have frequently held that instructions must be con-
sidered together, and that if as a whole they contain a correct
exposition of the law, we will not reverse, although, separately
considered, they might be objectionable. *Brown v. Bridges*,
31 Iowa, 138, and cases cited; *Parker v. The Dubuque and
Southwestern Railway Co.*, 34 Iowa, 399.

- V. The court instructed as follows: "7. If the draw-bar

in question was too short, or otherwise defective at the time of its construction, the defendant will be held to have knowledge of such defect, and negligent in its use."

*5. ——: ——: evidence.*

Appellant assigns the giving of this instruction as error, and insists that there is no rule of law which charges the owner of machinery with knowledge of defects existing therein at the time of its construction. It is tacitly conceded that if the defect be of such a character that the owner or person using it could not fail to observe it, he may be charged with knowledge of the defect from mere use, under the doctrine of *Greenleaf v. Illinois Central R'y Co.*, 29 Iowa, 14; but it is insisted that in case of the draw-bar being too short or *otherwise defective*, such as a latent flaw in the plates, springs or other attachments at the time of construction, there is no reason or propriety in charging the company with knowledge from the mere use, and that actual knowledge, or culpable negligence in lacking knowledge must be proved.

But the jury found by their special verdict that the draft iron was too short, that it was out of repair by having a defective head plate; and that the defendant had actual knowledge of the want of repair; the plaintiff having previously notified the defendant of the defects, and believing at the time of the accident that the defects had been remedied.

These special findings remove all possibility of prejudice on account of the giving of this instruction.

VI. The court instructed the jury as follows: "13. If the draw-bar was defective, and the plaintiff had knowledge of it, and made objection thereto, and was induced to remain in the defendant's employment by promise or assurance of its repair, and within a reasonable time, and before its repair, and not having waived the objection, he was injured by reason of such defect, and he did not contribute to the injury by his own fault or negligence, he will be entitled to recover, but in such case greater care will be required of him than if he had not known of the defect."

*6. ——: ——: waiver.*

The objection urged to this instruction is that there is no testimony upon which to base it; that the uncontradicted testi-

mony shows that more than a reasonable time within which to make repairs, had elapsed between the time that plaintiff made objection respecting the condition of the draw-bar, and the time he sustained the injury, and that the jury should have been instructed, as matter of law, that plaintiff had waived his objection.

The testimony shows that plaintiff sustained an injury by this way car October 1st, 1871, and that, at the time he called the attention of Smith, who was acting as conductor to the fact; and that about ten days thereafter he called the attention of Potter, the regular conductor, to the condition of the draw-bar, and asked him if he was going to report it; and that he said he thought he would, if he could find the car-repairer. The testimony further shows that plaintiff made but one more trip with that train, and then went upon the passenger train, and was gone some ten days.

The way car in question, by which the injury was inflicted, occupied the hind end of the train, and when an engine was coupled to it, it was attached to the hind end for the purpose of pushing the train up a grade. The plaintiff testified that when he came back from the passenger train he had no oppor-tunity to examine this draw bar, because it was a place he seldom had to go to couple this way car to the engine, and that he did not remember of coupling that car from the time of the first injury to the last.

This testimony tends to show that the coupling of this car to the engine was not a very frequent occurrence. Under all the circumstances, the plaintiff, in view of his absence, and the lapse of time, might reasonably suppose that the defendant had done its duty and repaired the defect. The effect of the instruction given is that plaintiff might recover, unless, after he made objection, he remained in the employment of the defendant, and use of this draw bar, after the lapse of a reasonable time for the repairing of the defect, from which a waiver of the objection might be implied. It is claimed that he remained in the use of the draw bar from October to January, which, it is urged, as matter of law is an unreasonable time, and implies a waiver of his objection.

But whether or not the plaintiff remained in defendant's employment an unreasonable time, cannot be determined from the lapse of time alone, but depends upon the circumstances, the frequency with which he was required to couple the car to the engine, the opportunities which he had for examining the draw bar after his return, and the necessity for making that examination, in view of his complaint as to its condition, and the right which he had to suppose it had been repaired. It is to be observed that one of the defects complained of is the weakness of the spring, permitting the draw bar to shove back. It is probable that no examination would detect whether or not this had been remedied, and that the only way in which it could be determined would be by seeing it come in contact with the engine. It seems to us that the instruction given is pertinent to the testimony, and that the objection urged against it is not tenable.

*7. ———: ———: reasonable time.*

VII. The court further directed the jury as follows:

"16. If the defendant used a defective draw bar, by reason of its being too short or out of repair, knowing it to be out of repair, or might have known of its want of repair by the use of ordinary care as before stated, by reason of which defective condition it was not reasonably safe to its brakeman, and the plaintiff, not knowing of such defective condition, attempted to couple the way car to the engine, and in so doing exercised the ordinary care of a reasonably prudent man, under all the circumstances then surrounding him, and in doing so was caught between the engine and cars and injured, you will find for plaintiff." It is claimed that this instruction is erroneous because it does not direct the jury that plaintiff is precluded from recovering, if, by the use of ordinary care he might have known of the defect, and he failed to use such care.

But this proposition is clearly expressed in the 11th instruction above set out, and we have already seen that the instructions must be considered together. The jury could not have supposed from the whole charge, that if the plaintiff's ignorance of the condition of the draw bar and head, was the result of his own

*8. INSTRUCTION: how to be considered.*

negligence, he could nevertheless recover, if he did not in fact know of the defect.

VIII. The court also instructed the jury as follows:

"19. You will consider all the evidence with care and deliberation, and determine the rights of the parties as to you shall appear just between men, from the preponderance of the testimony." It is objected that this instruction authorized the jury to determine the rights of the parties, as to them shall appear just from the preponderance of the testimony, without regard to law.

It cannot seriously be claimed, that the jury could have understood from these instructions that the court, after giving them eighteen carefully prepared instructions, embracing the law in its various phases applicable to the case, intended in the 19th instruction to tell them to disregard all that had gone before, and find a verdict from the evidence without regard to the law that had been given them.

We have noticed all the objections urged to the instructions given. The charge is unusually full and accurate and just to the parties; and it placed the jury fully in possession of the legal principles involved in the case.

IX. The defendant requested twelve instructions, covering four pages of the abstract, all of which were refused. Appellant assigns errors upon the refusal to give eight of these. Some of these instructions contain phrases which are erroneous or calculated to mislead; others of them are substantially covered by the instructions given. In view of the very full and fair charge of the court, embracing five pages and twenty distinct instructions, covering every view of the case presented by the testimony, and to which no objections are made, except those above considered, we are satisfied that there was no substantial error in refusing the instructions asked by defendant.

9. ———:
refusal of.

X. It is urged that the verdict is against the 12th instruction of the court, as follows: "If the draw bar was defective, and the plaintiff had knowledge of such defects, and objected to its use in such condition, and still remained in the employment of the defendant, and in the use of the draw bar, under

the inducement from his superior employes that it should be remedied, and it was not so remedied within a reasonable time he will be held to have waived his objection and assumed the risk, and cannot recover, though he was thereafter injured. A reasonable time would be such as would ordinarily be required to remove the defective draw bar and substitute a proper one." This instruction verifies the statement before made that the charge of the court is just and fair to the defendant.

It is claimed that plaintiff's own testimony shows that after he was hurt by this way car in October, and had called the attention of Pattee to the defect, he remained in the use of this way car between two and three months without making any further complaint, and that the testimony shows the defect could have been repaired in one day. The testimony, however, shows that plaintiff made but one trip after calling Pattee's attention to the way car; that he then went upon a passenger car and was gone ten days; that the coupling of the way car to the engine was not of frequent occurrence, and that plaintiff had no recollection of having so coupled it between the first and the second injury. We think this testimony warranted the jury in finding that plaintiff had not waived his objection, and that the verdict is not against this instruction.

XI. It is claimed that the evidence shows that plaintiff's own negligence contributed to the injury; that the proper 10. NEGLI-GENCE: railroads: coupling cars. way of making a coupling of a locomotive to a way car, as shown by the evidence, is to stand between them flatwise; and that it is clear the plaintiff was not standing in that position when he was injured.

. Whether or not it is negligence for a brakeman, making a coupling of a way car to a locomotive, to stand between them in any other position than flatwise, thus standing beside the draw bar and having the use of but one hand, as the evidence shows, is a question of fact for the jury.

. XII. It is claimed that there is no evidence that the draw bar was out of repair. The plaintiff testifies that the spring of the draw bar was either broken or very weak. But even if

it should be conceded that there is an absence of proof that the draw bar was out of repair, it is fully proved that it was too short, and that it was lengthened three inches · after this injury. The negligence of defendant is abundantly proved.

XIII. The only point which remains to be considered is that the verdict is excessive. The testimony shows that the plaintiff at the time of the injury was about thirty years of age. A physician who was called by the defendant, and who examined plaintiff at the time of the trial, about twenty-two months after the injury, testified that he found a fracture and severe injury of the pelvic bones, and atrophied condition of the joints, and muscular weakness; that he is totally and permanently disabled, and probably will not be able to use his arm actively. He was earning at the time of the injury $540.00 per year. In *Russ v. The Steamboat War Eagle*, 14 Iowa, 363 (372), it is said: "'So many elements' enter into the computation, so much necessarily is left to a wise and well guarded discretion, the difficulty of weighing nicely and determining with mathematical exactness the amount which should be paid for bodily suffering, mental anxiety and the like, that the excess should be so flagrant as to strike the mind at once as being the result of bias or prejudice, before the finding should be set aside." In this case a verdict of $3,000, for breaking the arm of plaintiff's wife, was sustained. In *Brown v. Jefferson County*, 16 Iowa, 339 (347), the plaintiff was thrown with a falling bridge into a stream beneath, a distance of eighteen or twenty feet, various parts of his body were bruised and an ankle was sprained, and his most serious injury was a comminuted fracture of the knee pan. A verdict of $3,839.75 was held not to be excessive. In *Collins v. The City of Council Bluffs*, 32 Iowa, 432, where a married · woman, who was a house-keeper, competent to take charge of a family of boarders, and who could earn in that position $300 to $350 per year, sustained an injury which permanently disabled her, a verdict of $15,000, the whole amount claimed in the petition, was reduced to $10,000. In *Sherman v. The Western Stage Company*, 29 Iowa, 515 (569), a verdict of $8,000 was reduced to $5,000; and in *Rose*

11. DAMAGES: limit of.

*v. The Des Moines Valley R'y Company*, 39 Iowa, 246, a verdict for $10,000 was reduced to $5,000. Both these were actions brought by the administrators for injuries to the estates on account of death, in which nothing could be allowed for pain and suffering. In the last case the deceased earned a little less than half as much as the plaintiff in this case. The verdict in this case is large, larger perhaps than any member of this court would, as a juror, have returned; but we cannot, in view of all the circumstances, and of the foregoing precedents, say that the excess is "so flagrant as to strike the mind at once as being the result of bias or prejudice."

A young man, thirty years of age, in an employment which yielded him $540.00 a year, in which there is a regular system of promotions, and in which he might have advanced to a much more lucrative position, received an injury which totally and permanently disables him from that employment and which physicians testify will probably shorten his life. The degree of his disability, the jury find, is nine-tenths. For this injury the jury have allowed a sum which, if put at interest at the highest rate, will yield a little more than double what plaintiff was earning when he was injured. The verdict is not as large, proportionately, as the sum which this court sanctioned in *Collins v. The City of Council Bluffs*, and in *Rose v. The Des Moines Valley R'y Co., supra*.

In view of all the circumstances we cannot say that the amount of this verdict is such as to justify our disturbing it alone upon that ground. After the foregoing opinion was prepared, an additional argument was submitted by appellant. We have considered it carefully, but we discover no reason for changing our conclusion.

AFFIRMED.