VIOLA GIBSON, ADMINISTRATRIX, Appellant, v. BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY.

**Negligence: JURY QUESTION:** *Master and servant.* A servant is not necessarily negligent in adopting a dangerous way of accomplishing a task when a safe way is open to him, but the question is one of fact to be determined according to the circumstances of the case, the reasons for doing what was done, and the care used to avoid danger.

SAME. Whether an employe in making choice of methods for performing his work used ordinary care and prudence to protect himself from injury was a question of fact for the jury and not a matter of law for the court.

INSTRUCTIONS. In an action for injuries received by a fireman in inspecting an engine, where there was evidence to show that it was his custom to notify other employes that he was about to inspect the engine and that he failed to do so at the time of the accident, a charge that such failure was contributory negligence was properly given.

**Instructions: HARMLESS ERROR.** Though the question whether it was the duty of an employe to use reasonable precautions to do his work carefully for his own safety was one of law for the court the employe was not injured by a charge submitting that question to the jury, where it authorized the jury to find that it was not his duty to use such stated care.

**Evidence: IRRELEVANCY.** A question the relevancy of which is not apparent from the evidence already given is properly excluded in the absence of an offer showing its relevancy.

RULE APPLIED. Where in an action for personal injuries a witness testified that he saw the accident, and at request of one of defendant's officials, went with him to defendant's office, exclusion of evidence as to why he went, and as to any conversation he had with such official, was proper, there being nothing to show that the evidence was either relevant or competent.

SAME. In an action for the death of a locomotive engineer killed by running of the engine while he was inspecting it by cars coming in contact with it, a witness who has testified that he had made one run on deceased's train before his death, may testify that on that occasion the deceased took the engine away from the train before inspecting it, where the deceased's failure to move the engine away before inspecting it is claimed to constitute contributory negligence.

COMPETENCY: *Cross-examination.* A witness who has testified that he acted as fireman for the deceased from June to September preceeding the accident, which occurred in January, may be asked whether or not it was customary before inspecting the engine to move it away from the train, and if his answer can be construed to apply to time of which he has no knowledge, the fact in that respect may be brought out by cross-examination.

EXPLANATORY—DFFINITENESS. A question as to whether a witness who has previously testified on the trial wishes to make any explanation about a question that has been asked him, is properly excluded where the question referred to is not identified in any way.

HARMLESS ERROR. The use of a map in an action for personal injuries, even if improper, is not prejudicial where there was no controversy in regard to any fact which the map would have shown.

SAME. Where the evidence showed that inspection of an engine in the manner made by an employe was dangerous, admission of expert evidence that it was dangerous was not prejudicial, though it was not shown that the experts were competent.

Proof: CONTRIBUTORY NEGLIGENCE. A railroad company may in support of its plea of contributory negligence in an action for the death of an engineer caused by cars coming in contact with his engine while he was inspecting it, prove that there is a rule that if an engineer goes into a dangerous place about his engine he is to notify all persons working about the train, although such rule has not been pleaded and though the rule was not a formal or printed one.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

WEDNESDAY, FEBRUARY 8, 1899.

ACTION at law to recover damages alleged to have been caused by negligence on the part of the defendant, which resulted in the death of the plaintiff's intestate. There was a trial by jury, and a verdict and judgment for the defendant. The plaintiff appeals.—*Reversed.*

*Clemens & Steel* and *Preston, Wheeler & Moffit* for appellant.

*J. C. Leonard* and *S. K. Tracy* for appellee.

ROBINSON, C. J.—On the fifth day of January, 1896, and for years before that time, the plaintiff's intestate, William H. Gibson, was in the service of the defendant, as locomotive engineer. Before 1 o'clock in the morning of the day specified, he arrived at Cedar Rapids, in charge of his engine, No. 69, on his run from the south, and commenced to inspect the engine, preparatory to giving it into the care of an hostler, who was to take it to the round-house. It was a part of the duty of the decedent to make the inspection, and, until it was completed, the engine remained in his care and subject to his control. A part of the inspection consisted in examining certain eccentrics, and, to do so, he was obliged to touch them. To accomplish that, he passed an arm between spokes of a drive wheel of the engine; and while in that position, endeavoring to touch an eccentric, the locomotive was suddenly moved forward, and he was caught between a spoke and a driving rod, and instantly killed. The movement of the engine was caused by coupling cars to the rear end of the train. The defendant is alleged to have been negligent as follows: "(1) In causing engine No. 69 to start forward while plaintiff's intestate was in such exposed position, without first giving him notice; (2) in causing engine No. 69 to start forward at the time and in the manner that it did; (3) in running a switch engine against the cars next behind said engine No. 69, and thereby moving said engine and tender forward; (4) in running said switch engine with great and unnecessary violence against the cars intervening between it and engine No. 69, thereby causing engine No. 69 to start forward, and catch and kill said intestate; (5) in not having said switch engine in proper repair and properly equipped, and under control and running at the proper rate of speed at the time it struck and pushed the cars between it and engine No. 69 against the tender of engine No. 69, thereby forcing said tender and engine forward; (6) in requiring plaintiff's intestate to inspect his engine at the time, in the manner, at the place, and under the

circumstances hereinbefore detailed." The defendant denies all negligence on its part, and avers contributory negligence on the part of the decedent.

I. A witness named Angle testified that he saw the accident, and went to the decedent as soon as possible, and found him dead, but that he did not remain to see the body released, for the reason that' he. was taken by a train dispatcher or railroad officer to the ticket office. He was then asked why he went with the official, if he knew the official, whether he had any conversation with him, how much time elapsed after he saw the decedent fast in the engine before he arrived at the ticket office, and whether anything was said to him by the railroad employes then in charge before he went to the office, and while Gibson was being taken out; but objections to the questions were sustained, and of those rulings the plaintiff complains. The witness had said that the man who took him into the office asked him if he saw the accident, and, upon receiving an affirmative answer, said: "We want you back here." There was nothing in the answer given nor in the questions to which objections were sustained which indicated that if anything was said to the witness while the body of Gibson was being removed from the engine, which was not shown, it was said by any one who knew how the accident occurred, or who was in any manner responsible for it, nor that what was said tended in any manner to explain the accident. The record fails to show anything from which it might be inferred that the testimony rejected was either relevant or competent, and it follows that the rulings of the court which rejected it were correct.

II. A witness named Swem was called by the plaintiff, and testified at some length. At a later day of the trial, he was recalled by the plaintiff, and a statement was made to him, as follows: "I asked you a question the other day, and it appears there is some misunderstanding about it. Do

you wish to make any explanation about that?" This was objected to "as indefinite"; the objection was sustained and of that ruling the plaintiff complains. We think it was correct. If the proposed explanation was material or relevant, the fact should have been indicated, at least by pointing out the testimony to which the question referred.

III. A map made by the city engineer November, 1895, was received in evidence, notwithstanding the objection of the plaintiff that it was incompetent and immaterial. It is said in argument that it was not shown to be correct, nor to represent the railway tracks as they were at the time of the accident. The map is not set out, and its contents can only be inferred from the statements of the counsel. There was no controversy, however, in regard to any fact which the map could have shown and its use in evidence, even if immaterial, could not have been prejudicial. Certainly, we cannot presume that it was, since it is not set out in the record.

IV. There was a dispute respecting the precaution which should have been taken to avoid the accident, the defendant contending that the engine should have been uncoupled and separated from the train while the inspection was being made. A witness named Bull testified for the defendant that he worked as fireman with the decedent from June to September, 1895; that it was customary for the hostler to go onto the engine at the depot, where the engine would be uncoupled; and that the decedent then ran the engine for inspection to C avenue. The witness was then asked this question: "Tell the jury whether or not it was customary on that train to move the engine forward after it got in, to look her over, prior to the accident?" An objection by the plaintiff was overruled, and the witness answered, "Yes, sir; it was." The plaintiff complains of that ruling, but we think it was correct. The testimony of the witness had shown during

what time he had personal knowledge of the custom of Gibson in regard to the inspection, and, if the answer could have been construed to apply to a time of which the witness did not have knowledge, the fact could have been shown by cross-examination.

V. A witness named Cameron testified that he was an engineer, and made one run on Gibson's train before his death, and was permitted to testify, over the objection of the plaintiff, that on that occasion he took the engine "down beween A and B avenues," to look it over. We are of the opinion that the testimony was proper as tending to show, with other evidence, where the engine of the decedent was ordinarily inspected. Cameron and another engineer testified that it was dangerous for a person to thrust an arm between the spokes of a locomotive wheel when it was at rest, because of the switching which was done when Gibson's train came in. It is objected that the facts to which the witness testified were not the subject of expert testimony; that it was sufficient to show the facts and the manner of doing the work; and that it was the province of the jury to determine whether the act was dangerous. The facts shown by the testimony make it clear beyond question that it was dangerous for the decedent to thrust his arm between spokes of the drive wheel, as he did, and the jury could not have reached any other conclusion had the opinions of the witnesses not been given. Therefore the opinions of the witnesses could not have been prejudicial, although we are of the opinion that the record does not show that they were competent.

VI. Several witnesses were permitted to testify, in substance, that it was the rule, if an engineer went into a dangerous place about his engine, for him to first notify the train crew or switching crew or all persons working about the train. The plaintiff contends that the testimony to that effect was erroneously admitted, because a rule of the defendant was not pleaded, citing *Mayes v. Railway Co.* 63 Iowa, 562; *Independent Dist. of Burlington v.*

*Merchants' Nat. Bank,* 68 Iowa, 343; *Nicholaus v. Railway Co.* 90 Iowa, 85; and *Strong v. Railway Co.* 94 Iowa, 380. We do not think those cases are applicable to this case. They refer to the necessity of pleading affirmative defenses. The rule referred to by witnesses in this case does not appear to have been a formal or printed rule of the defendant, but a custom of employes, and the testimony in regard to it was competent and material, as tending to show the negligence on the part of the decedent which the defendant pleaded.

VII. The appellant complains of a paragraph of the charge to the jury which was to the effect that if it was the duty of the decedent to inspect his engine upon his arrival in Cedar Rapids, at the time of the accident, and it was the usual custom, before entering upon his duties, to notify the parties in charge of the switch engine that he was about to inspect his engine, and if he failed to do so, he was guilty of contributory negligence, and the plaintiff could not recover. The ground of the complaint is that there was no evidence on which to base that instruction, but the complaint is based upon a misapprehension of the record. That shows that there was evidence which tended to show that it was the custom of the decedent to notify other employes of the defendant when he was about to inspect his engine, and that he failed to do so the night of the accident.

VIII. The ninth paragraph of the charge was as follows: "If you find from the evidence that inspecting the engine was one of the duties of the decedent that night on his arrival at Cedar Rapids, and it was also his duty, in doing so to do it carefully, for his own safety, and to take reasonable precaution to avoid accident to himself in doing the work, and if, in inspecting the locomotive, one of the ways of doing it was safe, and the other way was dangerous, then the deceased should have adopted the less dangerous course in doing the work; and if he did not do so, but adopted the more dangerous way, and thereby contributed to the accident,

then your verdict should be for the defendant." The evidence shows that the eccentrics might have been inspected by passing an arm between the spokes of the drive wheels, as was done by the decedent, or by crawling under the engine, but that the latter plan was not practiced. It was also shown that the engine might have been inspected when it rested against the train at the depot, or that it might have been run to a point some distance from the train, and have been there inspected; and the evidence tends to show that on the night of the accident the inspection was attempted after the engine was uncoupled, but before it was moved from the train. The decedent's run ended at Cedar Rapids, and his duties for the night would have been ended with the inspection and delivery of the engine to the hostler, to be placed in the roundhouse. It was the custom to attach to his train, as soon as it reached Cedar Rapids, several cars; and the men in charge of the switching waited on a side track with the switch engine, and, when the train stopped, proceeded to cut from the train cars to be left, if any, and to attach to it other cars to be taken out. That was done while the engine of the train was being inspected, and the decedent must have been fully aware of the fact. One of the complaints made of the ninth paragraph of the charge is that it required the jury to find whether it was the duty of the decedent to use reasonable precaution to do his work carefully for his own safety. It is insisted that the question thus submitted was of law, which should have been decided by the court. That is true, but it is clear that the plaintiff could not have been prejudiced by that part of the charge, since it seemed to authorize the jury to find that it was not the duty of the decedent to use the care stated.

It is also objected that the paragraph quoted required the jury to determine whether one of the ways of inspecting the engine was safe and the other dangerous, without any evidence upon which to base such a finding. We think that objection is without subtantial merit. The danger of which

the charge treated was not that to be apprehended from the moving of the engine when detached, but to its movements when caused by the switching. That there were two practical ways of making the inspection, one of which was safe from the danger referred to, and the other not, is apparent from the evidence.

It is further insisted that the paragraph was erroneous, in stating in effect, that the decedent was required to choose the manner of inspection, which was less dangerous than the other, without regard to his care or negligence. It is claimed that whether the decedent, in making choice of methods, used ordinary care and prudence to protect himself from injury, was a question of fact for the jury to determine, and that the court erroneously treated it as a matter of law. We think that objection is well founded. It has been frequently held by this court that a person is not necessarily negligent in adopting a dangerous way of accomplishing an object, when a safe way is open to him; that whether he is negligent is not ordinarily a question of law, but of fact, to be determined according to the circumstances of the case, the reasons for doing what was done, and the care used to avoid danger. *Nichols v. Town of Laurens,* 96 Iowa, 388; *Graham v. Town of Oxford,* 105 Iowa, 705; *Mathews v. City of Cedar Rapids,* 80 Iowa, 460; *Kendall v. City of Albia,* 73 Iowa, 241; *Walker v. Decatur County,* 67 Iowa, 307; *Belair v. Railroad Co.,* 43 Iowa, 662. The paragraph under consideration did not permit the jury to consider the facts, if any, which tended to justify the decedent in making the inspection with his engine against the train, but required a verdict for the defendant if the way adopted was dangerous. It was therefore erroneous.

IX. In the tenth paragraph of the charge the court instructed the jury that, if the decedent exercised ordinary and reasonable care in making the selection of the manner in which he should discharge the duties of inspecting his engine,

he was not guilty of negligence in choosing the mode of making the inspection. In the thirteenth paragraph the jury was told that if the decedent could have moved his engine from the train to make the inspection, and it would have been safer to do so, yet that fact alone would not conclusively show negligence, if he inspected the engine in the usual place and manner, and, in doing so, used ordinary and reasonable care. In the fourteenth paragraph the jury was told that, if the decedent used ordinary and reasonable care in inspecting the engine at the place where he did inspect it, the fact that it would have been safer for him to have moved the engine from the train to inspect it would not of itself constitute such contributory negligence as to defeat recovery. It is claimed that these paragraphs are in conflict with the ninth paragraph of the charge, and no argument is required to show that the claim is well founded. A mere reading of the paragraph shows the conflict, and they cannot, on any reasonable theory, be construed to be in harmony. It is said that they were much more favorable to the plaintiff than they should have been; and that may be true, but there was no attempt made to take the case from the jury. It was submitted on the theory that the evidence would have sustained a verdict for the plaintiff. Since that was done, the jury should have been properly instructed. *Hoben v. Railroad Co.,* 20 Iowa, 562; *Conway v. Railroad Co.,* 50 Iowa, 465. See *State v. Hartzell,* 58 Iowa, 520; *Hawes v. Railway Co.,* 64 Iowa, 315; *State v. Keasling,* 74 Iowa, 528; *Pumphrey v. Walker,* 75 Iowa, 408; *Neville v. Railway Co.,* 79 Iowa, 232. For the errors pointed out, the judgment of the superior court is REVERSED.