[No. 8168.]

## EL PASO LAND & FUEL CO. V. PERDARIS.

1. TRIALS—*Questions for Jury.* Disputed questions of fact are for the jury, *e. g.,* in an action for negligence, the question whether plaintiff was in the exercise of reasonable care. (219.)

And whether the time intervening between the master's promise to amend a defect in his ways or appliances, and the injury attributed to such defect, was reasonably sufficient to permit the corrction to be made. (220.)

And in the servant's action for the master's negligence in not repairing a defect in his ways or appliances, the question whether the servant relied upon the promise, or assumed for himself the risk of injury. (221.)

2. EVIDENCE—*Admissions by Conduct.* The promise of the pit boss in a coal mine to repair a defect in the mine track is a clear recognition of a duty resting upon the mine owner to make such repair; and there being nothing to the contrary in the testimony, the direction of the pit boss to plaintiff not to move his car upon the track until the repairs should be made, was held to sufficiently indicate that the promise to repair was made for the safety of the employe. (219, 220.)

3. MASTER AND SERVANT—*Master's Promise to Repair Defects.* Where, upon the servant's complaint, the master makes an unconditional promise to repair defects in his ways, appliances, or the like, the risk of the defect is cast upon the master until the lapse of such time as precludes all reasonable expectation that the promise will be kept, unless the danger is so manifest and imminent that no person of ordinary prudence would risk injury from it. (221.)

And after a time sufficient to accomplish the repair has elapsed the servant may assume, without investigation, that the promised repairs have been made. (222.)

*Error to El Paso District Court.* Hon. J. E. LITTLE, Judge.

Mr. R. L. HOLLAND, for plaintiff in error.

Messrs. ORR, ROBINETT & MASON, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

The defendant in error, Perdaris, recovered damages in the sum of two thousand dollars on account of injuries received while working as a coal miner in the employ of the plaintiff in error. Perdaris was working in room number seven, which is connected with what is known as the second east entry of the mine, by means of a narrow passage-way, in the form of a sharp curve, in which was laid a track for the movement of the mine cars. This track in the mine room was of light rails, and connected with heavier and larger rails near the neck or entrance to the room. The rail on the right hand going out of the room was on the outside of the curve, and very near the rib, or coal wall. The track from the room leading out was upon a sharp down grade, and to enable the miner to control his car in moving his load of coal toward the entrance, there was provided sprags, one for each wheel, for the purpose of stopping the wheels from turning, and acting as a sort of brake.

The plaintiff in pushing his car of coal toward the entry, and because of the lurch of the car occurring at or near the joint between the large and small rails, was thrown so that his head came between the car and the coal wall or rib, which resulted in severe and permanent injuries.

The plaintiff testifies that on Saturday, and prior to the injury, while moving out his last car on that day, he discovered that the track with the large rail at this point had become displaced, and moved several inches toward the outer rib along the curve and near the joint, and also that the joint connecting the large and small rail had become displaced, and that it was these defects which caused the injury.

He says that he at once called the attention of the pit boss to these defects, who carefully examined the same, and

directed the plaintiff not to take any more cars over the track, at that time, and said to the plaintiff that he would have it fixed before Monday. That the conversation and examination occurred on Saturday afternoon, and that he did not attempt to move the car over the track thereafter on that day. Plaintiff's working partner says he heard the conversation, and corroborates the testimony of the plaintiff in this particular, except that he says that the pit boss said he would have the track fixed "Monday," while the plaintiff says, "before Monday."

The plaintiff testifies further, that on Monday he entered the mine room by a different entrance than that where the accident occurred, which was his custom, and which was of shorter distance.

That he found his car partly filled with coal, and proceeded to fill it, and started with the car toward the entry. That he had placed sprags in three of the wheels, and was attempting to place a sprag in the fourth wheel, and on the right hand side of the car, when the car struck the defective place in the track and the injury occurred. He says that he fully relied on the promise of the pit boss to have the track repaired, and believed that this had been done.

As is usual in such cases, there is sharp conflict in the testimony of the opposing sides to the controversy.

The argument of counsel for plaintiff in error is chiefly directed to the action of the court in overruling his motion to direct a verdict for the defendant.

Counsel urges that it was the duty of the plaintiff to lay and maintain the track at the point where the injury occurred, and therefore the accident was by reason of plaintiff's own negligence in failing to repair the track himself.

But this involves a disputed question of fact, and hence was clearly within the province of the jury. It is admitted by all parties that it was the duty of the plaintiff to lay and maintain the track within his mine room. The accident oc-

curred near and after striking the joint, and the disputed question arises as to where that duty rests at the joint, and upon the displaced heavy rail, where the accident occurred. It appears that a fish plate should be used to securely fasten the rails at the connection, and that no such plate was used at the time. We think the jury were justified in finding upon all the evidence, that the light rails were for the special use of the miner in his room, and that the heavier rails were for the special use of the company, and to be maintained accordingly. And if the testimony of the plaintiff and his witness is to be believed, to the effect that the pit boss examined the defect, and promised to have it repaired, that this was a clear recognition by the defendant of the duty upon its part to repair the defect, and the jury was justified in so finding.

It is contended further, that if the plaintiff had operated his car from the left hand side, the accident could not have occurred, and seeks to invoke the rule that where one has a choice of ways in which to do the work in which he is engaged, at the time of the accident, one safe and free from danger, the other palpably unsafe and dangerous, he should choose the latter, and in so doing assumes the risk. But this involved another question of fact and the court fully and fairly instructed the jury upon this point. The testimony in this case we think justified the jury in their finding in this regard, but it is clear that under the circumstances of this case the court would not have been justified in finding as a matter of law, that there were two ways in which plaintiff could or should have handled the car, one safe and the other palpably unsafe. This involves a question of the exercise of reasonable care, to be determined by the jury from the evidence, under proper instructions. *Gibson v. Burlington & C. R. Ry.*, 107 Ia. 596, 78 N. W. 190.

It is further urged that there is no showing that the promise of the pit boss to correct the defects was made

with the view of removing possible danger to the employee. We think this sufficiently appears from the direction of the pit boss to not push the car over the track again until the repair was made, and there is nothing in the testimony that indicate other than that both the pit boss and the plaintiff had the question of danger in mind.

The rule of law in this regard is well stated in *Illinois Steel Co. v. Mann,* 197 Ill. 186, 64 N. E. 328, to be:

"Whether plaintiff's complaint and the promise of the foreman had reference to a threatened danger to plaintiff from the condition of the floor, or only to be better fit for use in doing work and running the buggies which carried the ingots over it, or both, as well as whether the time between the alleged promise and the plaintiff's injury was more than was reasonably necessary to enable the defendant to fix the floor, in view of all the circumstances and opportunities for doing such work, involved a consideration and weighing of all the testimony, and we think the court was right in submitting such questions to the jury."

Question is also raised as to reliance of the plaintiff upon the promise of defendants' agent to repair the defects. This is likewise a question of fact. The general rule as to the question of reliance in such cases and how determined, is briefly stated in *Besloff v. Strandberg,* 62 Wash. 36, 113 Pac. 250, as follows:

"The question in all this class of cases is, was the promise the inducement to continue at work, and did the respondent act as a man of ordinary prudence in the light of all the facts and circumstances? The promise, the time of the performance, and surrounding circumstances, and the act of the servant must be considered, not one alone, but all; and when so considered, we think the jury in this case was amply justified in holding that respondent did not assume the risk."

And the same court in *Morgan v. Ranier Beach Lumber*

Co., 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N. S.) 472, said:

"The authorities are not agreed as to the principle on which the liability of the master rests in this class of cases, yet all of the modern cases agree that where a servant makes complaint to his master of a dangerous defect in his place of work, or in the appliances furnished him with which to work, and the master makes an unconditional promise to repair the defect, the risk of the defect is cast upon the master until such time as would preclude all reasonable expectation that the promise might be kept, unless the danger from the defect is so imminent that no person of ordinary prudence would risk injury from it. But on whatever ground the liability may be assumed to rest, there can be no distinction in principle, in so far as the liability of the master is concerned, between an unconditional promise to repair, and a promise to repair on or after a certain date, or after the happening of a particular event."

And again, in *Modern, etc., Works v. Fries*, 228 Ill. 246, 81 N. E. 82, 119 Am. St. 428, it was held:

"The court or jury could determine from all the facts and circumstances whether the plaintiff was induced to remain in the service by the promise to repair the clutch on Saturday, when the machinery would be shut down and the work would be done, and if there was any evidence tending to prove the same, the question whether the plaintiff, relying upon the promise, was induced to remain in the defendant's employ until he was injured, was a question of fact."

By the promise to repair, the burden of assumption of risk was shifted to the defendant. In *Clark Lumber Co. v. Johns*, 98 Ark. 211, 135 S. W. 892, it was said:

"Assumption of risk being a matter of implied contract, the servant may be held to have assumed it, though his own act in proceeding in the face of danger did not constitute negligence on his part. But the master's promise to

repair the defect operates as a suspension of the servant's implied contract to bear the risk, and puts the obligation on the master to bear the risk during the period covered by his promise."

In this case there was testimony to show that the mine was not operated on Sundays; that the plaintiff was not expected to return to work until Monday; that the promise by the pit boss to have the track repaired before Monday was made on Saturday; that there was ample time in which to make the repair before Monday. Therefore, if this testimony be true, the plaintiff was justified in relying on the promise of the pit boss that he would cause the repairs to be made before his time to go to work on Monday, and in believing that the defect had been repaired as promised. The weight and sufficiency of the testimony in these particulars were for the jury. It is true that the duty to exercise reasonable care rests with the servant at all times, but under the circumstances of this case he was not required to specially investigate or inquire as to whether or not the master had kept his specific promise, after the time for its fulfillment had passed.

Counsel takes exception to some of the instructions of the court, but upon a careful examination of these we find that the circumstances of the case were quite fully covered and that alleged errors in that respect are without merit.

*The judgment is affirmed.*

GABBERT, C. J., and GARRIGUES, J., concur.