The Ind. Dist. of Burlington v. Merchants' Nat. Bank.

1. **Instructions**: MUST BE SUPPORTED BY THE EVIDENCE. An instruction which is not supported by the evidence cannot be sustained.

2. **Estoppel**: MUST BE SPECIALLY PLEADED: INSTRUCTION. Before an estoppel can be relied on, the facts constituting it must be pleaded; and where there was no such plea it was error to give an instruction upon the theory that it was allowable for the jury to find an estoppel.

3. ———: FACTS NOT CONSTITUTING. P., who was plaintiff's treasurer, was also the assistant cashier of the defendant bank, and the plaintiff's funds were deposited in the bank. The plaintiff's directors, being about to settle with P., inquired of the cashier of the bank as to the amount of school money P. had on deposit in the bank. The cashier referred the matter to a book-keeper, who, after referring to the books, handed to the cashier a slip of paper on which he had written " $36,-695.68," which slip the cashier handed to the directors. The amount named on the slip included a fictitious credit of $25,000 which P. had that day entered on the books with a pencil, and which he afterwards erased. *Held* that, since the fictitious entry was made by P. on his own behalf, and not on behalf of the bank, and it was not shown that the officers of the bank had any knowledge of the fictitious character of the entry, or that the cashier knew that the amount of the deposit, as shown by the slip, was too large, or that the directors relied on the figures given them to their injury, the bank was not estopped from denying that P. had an actual deposit of school money at the time equal to the amount named on the slip.

*Appeal from Washington District Court.*

Thursday, March 18.

Action to recover $35,721.24 as an alleged balance of a deposit account, and also to recover the same amount for money alleged to have been wrongfully used by the plaintiff's treasurer, one Parsons, in paying to the defendant his individual indebtedness. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff for $21,538.44. The defendant appeals.

*Newman & Blake, P. Henry Smyth & Son,* and *S. L. Glasgow,* for appellant.

*Hall & Huston* and *A. M. Antrobus*, for appellee.

ADAMS, CH. J.—I.   The court gave an instruction in these words:   "If you find that said Parsons, during his term of office as treasurer of the plaintiff, drew out of the school fund of the plaintiff, deposited by him in the defendant bank, a sum or sums for the purpose of paying or adjusting his own individual indebtedness or liability to said bank; and you further find by a preponderance of the evidence that this was done with the knowledge of the proper managing officers of the bank, other than Parsons,—then for such sum or sums thus drawn out defendant is liable in this action."   The giving of this instruction is assigned as error.   It is insisted by the defendant that it is wholly unsupported by the evidence, and we have to say that we think that its position must be sustained.

1. INSTRUCTIONS : must be supported by the evidence.

The plaintiff claims that on or about the twenty-third day of February, 1877, its treasurer, Parsons, being about to settle with the school board, and being short, borrowed of the defendant $25,000 to enable him to tide himself over the settlement; and with the understanding that the money should be refunded after the settlement; that the money thus borrowed was represented to be the money of the plaintiff; and that afterwards the indebtedness incurred by Parsons in borrowing the money was repaid from the plaintiff's money. There was some evidence tending to show that Parsons, who was not only the plaintiff's treasurer, but assistant cashier in the defendant bank, made an entry, just before the settlement, on the defendant's books, whereby the plaintiff, or what is the same thing, whereby himself as treasurer of the plaintiff, became credited with $25,000 as of that date.   But there is no evidence that he borrowed of the bank the money represented by the credit.   No money appears to have changed hands.   No corresponding item of debt was made in Parsons' individual account, nor note taken by the bank for the money, nor was there any knowledge on the part of any bank

officer, except Parsons, even of the entry of the credit item in the plaintiff's favor. It seems probable, indeed, that the credit item was wholly fictitious. It was soon erased, and forms no part of the account as it now stands. The plaintiff's own counsel virtually concede in their argument that the item was fictitious; and that no such money was actually deposited, or was so transferred to the plaintiff's account as to become rightfully a part of it. Such money, then, was never repaid, for the best of reasons,—it was never borrowed. Nor is there the slightest evidence that Parsons used school money to pay any other indebtedness of his own to the bank, either with or without the knowledge of the officers of the bank.

II. It only remains to be considered whether the plaintiff is entitled to recover on the alleged balance of account. The recovery allowed was unquestionably upon this It is not claimed that the account, as it now stands, shows a balance in the plaintiff's favor. Every dollar of school money received by the bank appears to have been properly paid out on the treasurer's checks, or upon school orders. But the plaintiff claims that the credit side of its account should be enlarged by reason of the item of credit of $25,000 already alluded to, which appears to have been made and erased. The fact is that ten days after the entry of that item, to-wit, on the third of March, another credit was given plaintiff of exactly $25,000. That, together with money about which there was no dispute, represented every dollar of money which the plaintiff had. There was, without that credit, in the defendant's bank $11,695.68; with that credit there was $36,695.68. The defendant concedes that on that day there was that amount in the bank. That is all that the plaintiff was entitled to have there, and all that the plaintiff claims in its petition was there. There is, moreover, no dispute about the fact that precisely that amount was afterwards properly paid out upon plaintiff's treasurer's checks, or upon school orders.

According to the undisputed evidence, and the theory of the plaintiff's own counsel, the account, as it stands, appears to be balanced, and that account represents every actual transaction entitled to appear in the account.

Sometimes it would seem, from the argument of plaintiff's counsel, that the plaintiff is trying to restore the credit item of $25,000 made and erased about February 23rd. They sometimes insist that the plaintiff had in bank, March 3rd, $61,-695.68, though no such averment was made in its petition, and though that is $25,000 more money than it had, or ever claimed that it had. But neither court nor jury proceeded upon the theory that that item should be restored. If it had been restored, that would have been the measure of the plaintiff's recovery. But the plaintiff recovered much less, and is satisfied. It recovered enough to make good its losses in another direction, to-wit, Parsons' general defalcation. Without that item of February 23rd restored, as it is evidently not to be, the account stands as it appears by the books, and about it there is no controversy.

The question, then, which we have to determine is as to whether the defendant is bound to make good the plaintiff's losses arising from Parsons' defalcations outside of any transactions with the defendant. The plaintiff claims that the defendant is thus bound. Its pretense is that the defendant's conduct was such as to lead the plaintiff to intrust Parsons with more money, which he squandered in some way, and blinded it to the necessity of pursuing him for what he had already squandered. This is a remarkable claim to be made against a national bank, organized with guarded provisions for the security of depositors and all other creditors. It certainly challenges the very gravest consideration. Whether, under any circumstances, a national bank can be held liable by reason of the fact that it has led some one into a false confidence in some one else, and into consequent losses, we do not need to inquire. The case can be disposed of upon its special facts. We are unable to see that the defendant did

anything by which the plaintiff can properly claim that it was misled to its injury.

We come, then, to the question as to what was this conduct of the defendant complained of in argument, and by reason of which it is pretended that the defendant became liable to pay the plaintiff, over and above the money deposited, more than $20,000. If we look into the plaintiff's petition or replication, we find no claim of such liability. It is averred, to be sure, that the defendant represented, on the third day of March, 1877, that the plaintiff had on deposit $36,695.68, and that the books of the bank showed that amount. But it is impossible to see in that averment any reason why the defendant should pay more than that amount. The plaintiff stated that amount as the balance which appeared on that day, and for the purpose of starting the accounting from that time. To this no objection could properly be made. That was the precise amount in bank on that day, just as the plaintiff claimed; but, it appearing afterwards that that amount had all been properly paid out, the plaintiff, by replication, set up the credit item of $25,000, entered a few days before and erased; which item the plaintiff's counsel virtually concede did not represent any actual credit to which the plaintiff was entitled, because the plaintiff had without it all the credit to which it was entitled. The use sought to be made now of that item is to show that the plaintiff was misled by it, and by what the bank officers said about it, into a false confidence in its treasurer, and so it went on trusting him with other money, and did not immediately sue him for the money which he had.

The plaintiff's counsel say, in argument, that they had a right to suppose, on the twenty-third day of February, that 2. ESTOPPEL: there was in bank, not only the $11,695.68 which must be specially was actually there, but $25,000 more which pleaded: instruction. ought to have been there, but was not there until ten days later. The fiction by which the $25,000 was made to appear to be in bank ten days too soon is relied upon as

constituting an estoppel, not exactly sufficient to close the mouth of the defendant against saying that the $25,000 was not there on that day, but against saying that there was not enough of the $25,000 there to make good the plaintiff's treasurer's general defalcation. But there is nowhere in the plaintiff's pleadings a suggestion that it relies upon an estoppel. An instruction having been given upon the theory that it was allowable for the jury to find such estoppel, we might reverse and remand for want of a sufficient pleading, and stop here. It is well settled that an estoppel should be pleaded. *Ransom v. Stanberry*, 22 Iowa, 334; *Phillips v. Van Schaick*, 37 Id., 229; *Folsom v. Freight Line*, 54 Id., 490. But the case was tried below on the part of the plaintiff as fully as if the question of estoppel had been raised by a pleading, and it is now submitted to us upon a voluminous abstract and full argument; and as we have reached a conclusion adverse to the plaintiff upon the merits of the question of estoppel, it seems proper that we should state the grounds of our conclusion.

The act of estoppel is alleged to consist in the representation made by the defendant on the twenty-third day of February that the plaintiff had in bank $36,695.68. The testimony of one of the plaintiff's board of directors shows that on that day two of the members of the board went to the bank and informed the cashier, Mr. McKitterick, that they had come to ascertain what money A. W. Parsons had to his credit there as school treasurer, saying that they were making a settlement with Parsons. McKitterick referred the matter to one of the book-keepers, who, after going to the books, returned and handed to McKitterick a slip of paper on which he had written $36,695.68, and McKitterick handed the paper to the school directors. This constitutes the entire act of the bank so far as the question of estoppel is concerned. The amount reported was, in fact, too large. It embraced the credit item of $25,000, entered with a pencil early that day or the day

3. ——: facts not constitut- ing.

before, and soon afterwards erased. As to who made the entry there was no very explicit evidence, but the vestige of the figures indicated that they were made by Parsons, and that evidence taken in connection with the circumstances leaves little doubt that the figures were his. McKitterick, the cashier, made no statement of any kind. He did not claim to know what the plaintiff's balance was, as appears from the fact that he referred to a book-keeper. No count of the money then, or the night before, would have shown the balance. Besides, it appears that McKitterick's duties frequently called him away from the bank, and, even when there, the more formal business of receiving and paying money and counting the money at night devolved largely upon Parsons, who was assistant cashier. It is shown, also that the business of the bank was large, the deposits amounting some days to $60,000.

It is insisted by the plaintiff that McKitterick must have known that the statement given was too large; but there is not a particle of evidence that he did. The book-keeper was not supposed to know anything more than what appeared by the books. That, in fact, was all that he undertook to report, and the directors understood this to be so from the very nature of the case. Whatever representation, then, was made to them was the representation of the books; and the evidence shows clearly that, if any officer of the defendant was responsible for the false item of credit, it was Parsons. But if the false entry was made by him for his benefit, it was not the defendant's act. The fact that Parsons was assistant cashier is not material. In attempting to falsify the books for his benefit he acted simply as an individual, and the case differs in no material respect from what it would have been if some other person had wrongfully gained access to the books and made the entry. The representation, then, complained of was, so far as the evidence shows, substantially that of the plaintiff's own treasurer. The directors had his statement as to what was in bank before they went there, and

it does not appear that they had in reality anything more than his statement afterwards. If they could not rely upon his statement before, they should not have relied ·upon it afterwards.

But, further than that, we are unable to find any evidence that the directors did, in fact, rely upon it to their injury. It is claimed, to be sure, by the plaintiff's counsel that the plaintiff was lulled into a sense of security, and omitted to sue and attach property, etc., as it would otherwise have done. Whether it was competent to show what the plaintiff would have done it is not important to determine. The plaintiff was secure without attaching property. Its treasurer had given bond as the law required, which was presumably good, and there is not a suggestion that it was not. But suppose that the plaintiff had attached, the attachment would have proved useless. The plaintiff's money was all in bank, standing to its credit, only ten days after the alleged misrepresentation. The attachment, if made, would of course have been dissolved. But the plaintiff's counsel say that the plaintiff would not have allowed subsequent school money to pass into Parsons' hands. But it does not appear that there was any such money until after the lapse of ten days, when the plaintiff's account at the bank had been made good, and embraced all the money which the plaintiff had. What the directors would have done no one can say, but there would have been no warrant for withholding money from a treasurer who was not in default. He was by law the legal custodian of the money, duly qualified by bond, and no unqualified person could properly lay his hand upon a dollar for the purpose of withholding it from him.

It is contended, to be sure, that Parsons was in fact in default from a time prior to February 23rd, and always remained so. It is said that the credit item of $25,000, of March 3rd, was probably fictitious, and that it was afterwards balanced by checks deposited by Parsons, but upon which nothing was drawn. But this theory is based upon pure con-

jecture. It is true that Parsons not long afterwards proved to be largely in default, and utterly insolvent. But it is equally true, as the evidence shows, that he stole $51,000 from the bank, and so it is not shown that he did not have the ability to make the deposit of March 3rd, corresponding to the plaintiff's credit of that date.

We are of the opinion that under the undisputed evidence the estoppel fails, both in respect to the alleged representation of the defendant, and the plaintiff's alleged reliance and action thereon. We think that the court erred in its instruction, which assumed that a verdict for the plaintiff could be based upon an estoppel.

Several questions have been argued which we have not specifically determined; but, under the views which we have expressed, we do not think that they can arise upon another trial.

The judgment of the district must be

REVERSED.