J. R. WATKINS MEDICAL COMPANY, Appellee, v. C. A. MOSS and W. A. SMITH, Appellants.

**Actions:** MISJOINDER OF CAUSES AND PARTIES.   Causes of action upon
1   distinct contracts, all of which are between the same parties and have relation to business of the same general character, may be sued in one action.   Thus an employer, under separate contracts for different periods, and the surety for the faithful performance of the contracts, may be joined in one action upon the several contracts.

**Principal and surety:** LIABILITY OF SURETY: MEASURE OF DAMAGES: IN-
2   STRUCTION.   Where there was no evidence that the surety on a fidelity obligation was not aware of the state of the account between his principal and the employer, at the time he became responsible for the performance of the former's contracts, an instruction that the liability of the surety should be measured by that of his principal and recovery awarded accordingly was not erroneous, simply because the indebtedness of the principal arose largely under earlier

contracts, and because the failure of his principal to settle the earlier claims was not communicated to the surety before entering into new contracts.

Same: CONTRACTS OF EMPLOYMENT: SETTLEMENTS: PRESUMPTION.
3 Where contracts of employment contained no reference to a settlement of prior dealings between the parties, and there was no provision for any continuing obligation, except the agreement to make new contracts after a stated period if the employee satisfactorily performed. the service, no presumption in law of a settlement of mutual claims prior to the time of making a new contract arose.

Same: BREACH OF CONTRACT: COUNTERCLAIM: WAIVER: PLEADING.
4 Where an employer sued upon separate and independent contracts of employment covering successive periods to recover from an employee the amount claimed to be due, treating the several contracts as distinct causes of action, the employee, a traveling salesman, was entitled to counterclaim for breach of contract, including a claim for excluding him from part of his territory assigned him by the contracts; unless the right of counterclaim had been lost or waived, which fact constitutes an affirmative defense and must be pleaded to be of avail.

Same: SETTLEMENT: EVIDENCE. The fact that new contracts are
5 entered into between the parties is not conclusive that there was a settlement or adjustment of claims arising under earlier contracts, but its weight and effect are for the consideration of the jury.

Same: PLEADINGS: EVIDENCE. In general a party alleging a material
6 and disputed fact is entitled to put in evidence any and all legitimate matters having a tendency to establish its truth. So where the defendant, a traveling salesman, alleged by way of counterclaim that his employer through his auditing agent had refused to allow him to make sales in part of his territory according to his contract of employment, and had refused to supply goods to fill his orders, evidence of the statements and conduct of the auditor, who was authorized to settle the accounts of salesmen, was admissible in support of the allegations.

Same: LIABILITY OF SURETY. The liability of a surety for the perform-
7 ance of an employment contract cannot exceed that of his principal.

*Appeal from Harrison District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY, MAY 8, 1913.

THE nature of the action and the material facts are sufficiently stated in the opinion. *Reversed* and *Remanded* for new trial.

*J. S. Dewell* and *S. H. Cochran*, for appellants:

*Roadifer & Arthur* and *Tawney, Smith & Tawney*, for appellee.

WEAVER, C. J.—The plaintiff is a corporation engaged in the sale of medicines and remedies of various kinds through the agency or employment of traveling salesmen. On February 24, 1904, the defendant Moss entered the plaintiff's employment as salesman for a period ending March 1, 1905, according to the terms of a written contract executed by the parties as of the date first named. By the terms of the writing Moss was to canvass and make sales in the counties of Montgomery and Wilson in the state of Kansas. New contracts of like nature for additional periods were made between the parties from time to time without substantial change of terms, the last of such instruments bearing date April 22, 1908. In each instance the defendant Smith in writing became surety for the faithful performance of the contract by Moss. Without prolonging this statement by setting out at large the terms of the writing it is sufficient to say that plaintiff undertook to furnish the goods at a designated scale or schedule of prices, and Moss on his part was to canvass his territory from house to house, making sales at prices fixed by the plaintiff. According to the practical interpretation given the contract by both parties Moss was authorized to sell for cash and upon credit to the customers within his territory, and to make collection of accounts so accruing, and it was his duty to make frequent reports of the business done, including both sales and collections made by him. The salesman's profit or compensation consisted of the margin between the retail prices for which sales were made and the schedule

prices at which the goods were charged to him. The contract further provided that at the termination of the employment the salesman could return the goods remaining in his hands and receive due credit therefor. This action at law was begun September 24, 1909. The petition as originally filed declared upon the last contract only, but set out a bill of items covering practically the entire period of the services of Moss. Later by amendment the several contracts were all pleaded as affording the plaintiff a basis for recovery. The itemized statement shows an alleged balance of $1,631.74 against Moss, and for this sum judgment was asked against both defendants. The defendant Moss, answering separately, denies the plaintiff's claim, and alleges full accounting and payment for all matters properly chargeable to him under said contracts. He further alleges that said contracts were in fact abandoned, and that the dealings of the parties were to a great extent at least carried on without reference to the written agreement. He also pleads by way of counterclaim that plaintiff, in violation of its agreement, excluded him from Wilson county, Kan., which was part of the territory assigned to him under the terms of the contract, and took possession of his books of account, refusing to return them on demand, or to return collections made thereon, whereby he sustained damages in a large sum, for which he demands judgment. For further counterclaim he alleges that plaintiff, in violation of his agreement, failed and refused to fill many of his orders for goods, whereby he sustained further damage. He further pleads that at the termination of his service he tendered and offered to plaintiff all the goods he had left on hand, but plaintiff refused to receive the same or to give him proper credit therefor, and he avers that the credits to which he is entitled for payment made and goods on hand, and for damages sustained by reason of plaintiff's several alleged violations of their agreements, are more than equal to the just claims and demands which plaintiff holds against him. The surety, Smith, answering for himself, relies not only upon the

defenses pleaded by Moss, but alleges that he has been released from all liability upon the claims against Moss because of plaintiff's violations of the terms of the contracts. Plaintiff denies all the counterclaims and affirmative defenses pleaded in the answers. The issues were tried to a jury, resulting in a verdict in favor of plaintiff for $900. From the judgment entered upon this verdict defendants appeal.

The assignments of error are too numerous for us to attempt their separate statement and consideration. So far as they raise material questions they may be grouped and considered in the following order:

I. Appellants say there is in this action a misjoinder of parties and causes of action, but we think the point is not well taken. It is true plaintiff pleads and demands recovery upon several distinct contracts, but these agreements are all between the same parties and all have relation to business of the same general character, and no good reason is suggested why all matters of controversy relating thereto may not be adequately considered and fairly tried in one action. Whether the true relation of Smith be that of joint debtor or guarantor or surety for Moss, it is certainly proper under our practice to join them as defendants in an action upon the contract, and if there be two or more contracts of the same general nature upon each of which the defendant and his guarantor have assumed the same kind of liability, why should they not be joined and the whole matter settled in a single lawsuit? It is the policy of the law to discourage multiplicity of actions. Code, section 3545. The appellants' objection in this respect was properly overruled.

1. ACTIONS: misjoinder of causes and parties.

II. The court instructed the jury that under the issues joined and the evidence offered on the trial the defendant Smith's liability was to be measured by that of his codefendant Moss, and that if the jury should find the plaintiff entitled to recover against the latter, a like recovery must be found against the former. This it is said is erroneous be-

2. PRINCIPAL AND SURETY: liability of surety: measure of damages: instruction.

cause the alleged indebtedness arose largely from dealings had under the earlier contracts, and the fact that Moss had not fully settled these claims was not communicated to Smith, when he was asked to enter into these subsequent contracts of suretyship. It might well be that if Moss became delinquent, or failed to properly account for goods placed in his hands, and plaintiff took Smith's bond or contract of suretyship upon the renewed contracts concealing from him the fact of such default on the part of his principal, it would constitute a good defense to an action on the new bond, but as we read the record no such state of facts is shown. Smith did not testify in his own behalf, and there being no evidence indicating that he was not fully aware of the state of the account between his principal and the plaintiff when he assumed the responsibility for the principal's performance of the latter contracts, the instruction of which he complains was manifestly proper.

III. The trial court ruled, in substance, that the act of Moss in executing new contracts from year to year without asserting any claim for damages on account

3. SAME: contracts of employment: settlements: presumption.

of any alleged breach of the prior contracts was, as a matter of law, a waiver of such claim, if any he had, and that in this action his counterclaim for damages must be confined to matters occurring, or dealings had between the parties, subsequent to the date of the last of the series of contracts. Error is assigned upon this ruling, and we are of the opinion that the exception is well taken.

The later contracts contain no statement or agreement of settlement of the prior dealings of the parties, and while the execution of the later instruments may justify some inference or presumption that their mutual claims up to that date had been adjusted, we think there is no rule or principle authorizing the court to assume such settlement as a matter of law and withdraw the question from the consideration of the jury. There is nothing in the record to conclusively indicate the intention of the parties to accomplish a substitution

of contracts. Each is made for a definite limited period, and provides no continuing obligation on the part of either party except an agreement by plaintiff to make a new contract upon the expiration of the stated period if the business done by the defendant proves satisfactory. Each subsequent contract is a separate and independent undertaking of the parties, for separate and distinct periods of time. True the service agreed to be rendered by the defendant is of like nature in all of them, but each agreement is complete in itself, and no reason appears why each party may not maintain action for the alleged breach of any one of them without reference to the others. Indeed the plaintiff in its amended petition so treats the several contracts, and in separate counts alleges the failure of the defendant to perform his several agreements as distinct grounds or causes of action. In other words, plaintiff brings defendant into court to recover a sum alleged to be due upon the first contract made in 1904, and upon other similar demands alleged to be due by the terms of each of the later contracts.

The right of a defendant so sued to assert a counterclaim for damages for a breach of the same contract by the plaintiff is a familiar one in our practice, and is guaranteed by statute. Code, sections 3566-3570. The defendant in this case, being sued upon a specified contract, may therefore counterclaim for any alleged breach thereof by the plaintiff, unless the demand or cause of action so pleaded has been in some manner settled or adjusted, or the defendant has in some other manner estopped himself from asserting it. If the right to counterclaim has been thus lost or avoided or waived, that fact constitutes an affirmative defense which, to be of avail, must be pleaded. *Kinkead v. McCormick Harvesting Mach. Co.,* 106 Iowa, 222; *Murray v. Thiessen,* 114 Iowa, 657; *Bank v. Brown,* 142 Iowa, 195; *Ind. Dist. v. Bank,* 68 Iowa, 343; *Bank v. Zeims,* 93 Iowa, 140; *Eggelston v. Mason,* 84 Iowa, 630.

4. SAME: breach of contract: counter-claim: waiver: pleading.

There is here no plea or waiver or estoppel. There is no evidence of any settlement, adjustment, or compromise of defendant's claims arising under any of the earlier contracts, save only such as we may infer from the circumstance that one or more new contracts were thereafter entered into. That this is not a conclusive inference has often been held, but its weight and effect are for the consideration of the jury. Bearing upon this proposition see *Mallory v. Ellwood,* 120 Iowa, 638; *Bank v. Rathmann,* 78 Iowa, 288; *Hennesy v. R. R. Co.,* 65 Minn. 13 (67 N. W. 635).

5. SAME: settlement: evidence.

The holding by the Minnesota court in *Watkins v. McCall,* 116 Minn. 389 (133 N. W. 966), cited by appellee, is not necessarily inconsistent with the views we have here expressed. In that case the question considered was not a defense or counterclaim by the principal defendant, but rather the disputed liability of the guarantor for the conceded liability of his principal, which existed at the date of the last contract. Even in that case the court, after referring to the precedents, says: "Within the rule stated it may be conceded, for the purposes of the case, that, had this action been founded upon the guaranty attached to the second year contract, under which the departure complained of was permitted by the plaintiff, no recovery could be had. But the action is not founded upon that contract, and the rule stated has no application." In the case at bar the action is based upon breaches of each and all of the contracts. As we have before suggested, each contract is complete, entire, and independent of the others. While the subject-matter is of like nature in all, it is not the same. Neither is expressed nor appears to be a substitute for the other, and as we have already said, we see no reason why, when sued upon either contract, the defendant should be held precluded from contesting his liability thereon by asserting any defense or counterclaim which would have been open to him had such contract been the only one ever existing between the parties.

IV. Among other things, the defendant by way of counterclaim alleged that plaintiff employed and authorized him

6. SAME: pleadings: evidence.

to act as salesman in the counties of Montgomery and Wilson in the state of Kansas, upon terms by which the amount of his compensation depended upon the amount of his sales of plaintiff's goods, and after he had entered upon said employment and after he had canvassed said counties and established the trade therein in a manner to make the business profitable, plaintiff in violation of its agreement refused to permit him to continue the same in said territory, and refused to supply him with goods for his said trade, or to fill the orders taken and reported by him all to his material injury, for which he claims compensation. He further alleges that at said time he had due him book accounts and claims against customers in said territory to an amount largely in excess of his indebtedness to plaintiff, that plaintiff took possession of said books and accounts, refusing to return the same to him upon due demand, and has ever since refused and failed to account therefor, or for collections made thereon, whereby he claims he has been damaged in the sum of $2,000. The plaintiff having denied the counterclaim, the facts thus put in issue became material matters of inquiry upon the trial.

The trial court, adopting the theory already mentioned that the act of the defendant in entering into the later contracts operated as a waiver of his right to recover for any alleged violation by plaintiff of the earlier contracts, excluded all testimony offered in support of such claim, and instructed the jury that it could consider only the claims, if any, based upon alleged breaches of the last contract of the series. The question thus presented has already been discussed, and for reasons stated we think the ruling and instruction erroneous to the prejudice of the defendant. In the same connection defendant, in support of his allegation that he had been wrongfully excluded from part of his territory and deprived of his books of account by the plaintiff, offered in evidence

certain letters written to him by one Scotthorn, an auditor of the plaintiff corporation. The offer was rejected and the letters excluded, upon the ground that Scotthorn's authority in the premises had not been shown. It appears that Paul Watkins, an officer and manager of the plaintiff company, being upon the witness stand, testified that Scotthorn was one of the company's auditors, having authority to instruct agents and salesmen how to handle the business, to inspect and settle the account of such agents and salesmen, and that he was sent by the company to Kansas to inspect the defendant's accounts and to look after that particular agency. In the performance of this duty Watkins says Scotthorn may have taken possession of defendant's books, though he does not remember the fact. He further says the auditor was authorized to settle with the agents or salesmen and to employ new ones. The letters offered in evidence are signed by Scotthorn, and clearly refer to the matter of defendant's agency and the business being done by him as salesman of the plaintiff's goods. It would appear therefrom that Scotthorn then had possession of defendant's book, or books, of account for Wilson county, and that defendant had written him asking their return. Concerning this request and the matter of defendant's agency or employment, Scotthorn appears to have written him letters as follows:

Salina, Kansas, July 24, 1906.

Dear Mr. Moss: Your reports and letters have all been received and contents noted. I sent into the house about your Wilson county book, asking if I should return it as you requested and I waited until now for the answer. Paul writes: 'We do not want you to turn over Moss Wilson Co. book. We have had trouble enough with him in them and we want him to keep out of Wilson county altogether. When we get a new agent in Wilson we will let him collect the acts. You may so notify Moss.' I also wrote you that you would be expected to send into the company 70% of your cash income which you haven't done but once since I wrote you. Now you are to understand that you keep out of Wilson altogether and send

us 70% of Montgomery county account or else we shall close our business with you at once. The company doesn't seem to have confidence in you and this is the requirements. If I know of your being in Wilson county or collecting there, I shall at once close up your business and call on your surety for settlement. Just as soon as we can get an agent for Wilson, we will set him at work making collections there. If you can get Mr. Johnson, apply to me at once and tell me who his bondsmen will be and if all right I will send him a contract.

Your truly,                                K. T. Scotthorn.

### Exhibit 83.

Salina, Kansas, July 26, 1906.

Mr. Moss—Dear Sir: I notice by your last report that your next post office would be Fredonia. I write to tell you, you must keep altogether out of Wilson county and *do no collecting there at all*. I have sent letters to Independence explaining this. To fail in doing this is to lose your job at once. They refuse to return your Wilson county book or let you collect there. As soon as a new agent is procured book will be turned over to him for collection. Now this means, Moss, that you get out of Wilson at once and stay out or we shall call on your surety for a settlement.

Respt.,                                K. T. Scotthorn.

We are quite clear that the objection to this evidence should have been overruled. Scotthorn was the admitted representative of the plaintiff. He had power to settle with the defendant, to instruct him in the management of the business, and to employ other salesmen in his place. That in the course of this business he had obtained possession of defendant's book or books is revealed by his letters, and that he was refusing to return them or to permit defendant to make sales in Wilson county, and in so doing was acting under instructions from plaintiff, is also made clear. This correspondence is quite evidently within the scope of the auditor's apparent authority, and defendant was entitled to have them go to the jury. Generally speaking, a party is entitled to prove any fact alleged in his pleading and denied by his adversary.

Defendant had alleged his exclusion from the business in Wilson county and the withholding of his books by plaintiff. This counterclaim was met by denial only. No plea of waiver or estoppel was interposed. A party alleging a material disputed fact is entitled to put in evidence any and all matters having a legitimate tendency to establish its truth. That the letters in question come within the rule is very clear, and defendant's exception to their exclusion must be sustained.

V. Much attention is given in argument as to whether the course of business between plaintiff and the principal defendant, Moss, had not been such as to relieve the codefendant, Smith, from liability as guarantor. We think it unnecessary to pass upon that question, except to say we find nothing in the record upon which the court could have properly held the guarantor discharged as a matter of law. Whether upon a retrial in harmony with this opinion there will be developed a state of facts requiring such a holding, or requiring that the question of the guarantor's liability be submitted to the jury under proper instructions, we cannot anticipate, and must assume that all such questions will be properly disposed of as they arise. The guarantor's liability can in no event exceed that of his principal, and whether it be any less will depend upon the application of familiar rules to the record as it shall then be made.

*7. SAME: liability of surety.*

For the reasons stated, the judgment and verdict will be set aside and the cause remanded for a new trial. The costs of this court will be taxed against the appellee. *Reversed.*